IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES EVERETT SHELTON :
 : CIVIL ACTION
 : NO. 18-2071
v. :
 :
FAST ADVANCE :
FUNDING, LLC :

## OPINION

Plaintiff James Shelton brought this action for damages based on alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the regulations promulgated thereunder, 47 C.F.R. § 64.1200, claiming that Fast Advance Funding, LLC ("Fast Advance") called his personal cellular telephone number for a telemarketing purpose despite his number being on the National Do Not Call Registry in violation of §227(c)(3)(F) and 47 C.F.R. § 64.1200(c)(2), without having a written policy, available on demand, for maintaining a do-not-call list in violation of 47 C.F.R. § 64.1200(d)(1), and after Plaintiff requested that he not receive calls from Defendant in violation of 47 C.F.R. § 64.1200(d)(3).

## I. INTRODUCTION

Throughout this litigation, Defendant Fast Advance has failed to participate in discovery. Significantly, Defendant never responded Plaintiff's Requests for

Admission, which Plaintiff propounded on Defendant on February 11, 2019. ECF No. 40-4; ECF No. 43. Three weeks prior to the date set for trial, Plaintiff filed a Motion in Limine to prevent Defendant from Offering Testimony or Evidence Contrary to the Admitted Requests for Admission, requesting that the Court confirm that the Requests for Admission are admitted, pursuant to Federal Rule of Civil Procedure ("FRCP") 36(a)(3). ECF No. 40. In its opposition, Defendant argued that the discovery deadline was March 1, 2019, only 18 days after Plaintiff sent Defendant the Requests for Admission, and that Defendant is entitled to 30 days to respond under F.R.C.P 36(a)(3). ECF No. 43. Therefore, Defendant argued, as "Defendant's response date would have been March 13, 2019," which "is after the close of discovery, no response was required." ECF No. 43 at 1. Defendant claimed:

> Plaintiff was obliged to serve his Requests for Admissions early enough for Defendant to respond before the completion of the discovery period or move the Court for an extension of the discovery completion date. Plaintiff did neither, and his Request for Admissions were untimely. No response was required.
> *Id.* at 1-2.

Defendant cited no law nor pointed to any statute stating that a defendant does not have to respond to Requests for Admission with a due date 12 days after the discovery deadline, nor did Defendant explain why it did not request that the discovery period be extended. This Court, therefore, granted Plaintiff's Motion in

Limine, confirming the Requests for Admission were admitted and requiring that Defendant not seek to admit any evidence at trial to refute or rebut the admissions.

## II. REQUESTS FOR ADMISSION

In completely failing to participate in discovery and in ignoring Plaintiff's requests for information despite FRCP 36(a)(3)'s requirement that a "matter is admitted unless . . . the party . . . serves . . . a written answer or objection," Defendant compelled the Court to find for the Plaintiff. FRCP 36 provides the parties an opportunity to "reduce the area of dispute at the trial," and allows the parties to provide a "studied response" made by the party with the "direction and supervision of counsel." *Airco Indus. Gases, Inc. Div. of the BOC Grp., Inc. v. Teamsters Health & Welfare Pension Fund of Philadelphia & Vicinity*, 850 F.2d 1028, 1036 (3d Cir. 1988). "Rule 36 serves two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be." *Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 803 (3d Cir. 1992).

If Defendant had responded to these Requests for Admission, or participated in discovery in any way, the Court would have been able to structure the case for trial. Instead, Defendant was disengaged. In the weeks leading up to trial, this Court was required to email Defendant's counsel multiple times, including sending

a letter via mail directly to Defendant Fast Advance, to ensure that it had representation present for trial. A responsive counsel for Defendant finally entered his appearance on April 8, 2019, ECF No. 41, and although Defendant timely filed its pretrial memorandum, it failed to include a proposed verdict slip, proposed Points for Charge, and proposed voir dire, as required by the scheduling order. ECF No. 42; ECF No. 43.

On the morning of what was intended to be a jury trial, on May 1, 2019, this Court met with the parties to discuss the remaining issues, if any, for a jury to decide in this matter. At the time of this meeting, this case had been called for a jury trial, ECF No. 38, and a jury was waiting to be empaneled. Defendant argued that it should be allowed to take the testimony of Plaintiff James Shelton to establish that his phone was used for business purposes, which it claimed would act as a bar to standing under the TCPA,[1] despite having done no discovery at all

[1] Defendant claimed in its Amended Pretrial Memorandum, ECF No. 53, that if Plaintiff had used his phone for business purposes, Plaintiff would lack standing to bring a TCPA action, pursuant to *Shelton v. Target Advance LLC*, No. CV 18-2070, 2019 WL 1641353, at *1 (E.D. Pa. Apr. 16, 2019). In that matter, Plaintiff's 47 U.S.C. § 227(c) claims were dismissed for lack of standing because Plaintiff used his phone for business purposes, and the Court therefore determined that Plaintiff was not entitled to list this phone number on the National Do Not Call Registry. *Target Advance*, 2019 WL1641353 at *6. In this matter, Plaintiff brings three distinct claims, alleging willful or knowing violation of each, for a total of six counts. Only one of these violations, and therefore two counts, relies on § 227(c). Therefore, even if the violation of § 227(c) was dismissed for lack of standing, Counts III-VI would remain. Accordingly, this argument would not act as a total bar to standing under the TCPA, as Defendant claims. Furthermore, in that matter, the complaint alleged that "Plaintiff uses the Phone Number for personal matters **and for a business he owns called Final Verdict Solutions**, which is in the judgment collection business and has been registered with the Commonwealth of Pennsylvania since March 2016." *Id.* In this matter, the Complaint, which was admitted via Request for

on this, or any other, matter during the discovery period. Furthermore, neither in

its pretrial memorandum nor at the hearing prior to the trial did Defendant cite any

Third Circuit precedent, nor any explicit section of the TCPA, decisively

establishing that use of one's phone for business purposes precluded standing.[2]

This Court determined that, because the Requests for Admission were

deemed admitted, Defendant had admitted that Plaintiff's cell phone was a

"personal cellular telephone," and a "private mobile telephone . . . used for

personal purposes." ECF No. 1 at ¶¶ 20, 50.[3]  Therefore, the Court concluded that

---

Admission No. 15, nowhere states that this phone number was used for anything but personal purposes, and therefore the Court determined that there was sufficient evidence to determine, as a matter of law, that the phone was used for personal purposes and, therefore, Plaintiff was permitted to register his phone number on the National Do Not Call Registry. Defendant made no argument drawing upon the requirement in § 227(c), § 64.1200(c) and (d) that Plaintiff's phone be "residential." *See infra* note 7.

[2] In its pretrial memorandum and at the May 1, 2019 hearing, Defendant argued that the holding in *Target Advance* would preclude *any* telephone number used for business purposes from bringing any TCPA claim. ECF No. 53. The Court in *Target Advance*, however, held only that claims under § 227(c) may be barred if "Plaintiff held the Phone Number out to the world as a business phone number, [because] he could not register it on the National Do Not Call Registry for purposes of avoiding business-to-business calls." *Target Advance LLC*, 2019 WL 1641353, at *6 (E.D. Pa. Apr. 16, 2019). The court in *Target Advance* did consider whether Plaintiff would be wholly protected by the TCPA, discussing that if the "sole purpose of [plaintiff's company] is to drum up TCPA litigation by inducing business-to-business robocalls, *Stoops* would appear to bar Plaintiff's claims since he likely has not suffered an injury-in-fact and his claims are not within the zone of interests the TCPA was enacted to protect.." *Id.* at *4 (citing *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016)). The *Target Advance* court held, however, that discovery was required to resolve those factual issues. *Id.* This conclusion is distinct from the "business purposes" argument made by Defendant. There is no evidence of Plaintiff's business in the record, and Defendant has never argued that Plaintiff's business was created for the "sole purpose" of "drum[ming] up TCPA litigation by inducing business-to-business robocalls." *Target Advance*, 2019 WL 1641353 at *6. Therefore, this argument is irrelevant to the Court's analysis.

[3] All allegations in Plaintiff's complaint were admitted via Request for Admission No. 15, which states "Admit to all allegations, factual and legal, in Plaintiff's complaint."

the evidence admitted conclusively established that Plaintiff was permitted to register his telephone number on the National Do Not Call Registry, and, even considering the holding in *Shelton v. Target Advance*, Plaintiff has standing in this matter. Once the Court had determined the issue of standing, and because the Requests for Admission were deemed admitted, the parties agreed that there were no other issues for which they needed a jury, even though a jury was waiting to be empaneled. The parties agreed that the Court should decide the only remaining issue, whether the violations of the TCPA and its regulations were willful and knowing, which the statute states is a matter for the court to determine.[4] The Court made its findings based on a preponderance of the evidence standard.

## III. FINDINGS OF FACT

1. The phone calls made in this case were claimed to be violative of the regulations, 47 C.F.R. § 64.1200(c) and (d), established pursuant to 47 U.S.C. § 227(c), which require that "[n]o person or entity shall initiate any telephone solicitation to . . . [a] **residential telephone subscriber** who has registered his or her telephone number on the [N]ational [D]o-[N]ot-[C]all [R]egistry," § 64.1200(c)(2), and "[n]o person or entity shall initiate any call for telemarketing

---

[4] "If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." 47 U.S.C. § 227(c)(5)(C).

purposes to a **residential telephone subscriber** unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." § 64.1200(d) (emphasis added).

2. Plaintiff James Shelton is the subscriber of a cellphone number (the "Phone Number"), which he uses as his personal cellular telephone number for "personal purposes," and which has been registered on the National Do Not Call Registry since June 2015. ECF No. 1 at ¶¶ 19-20, 50.[5]

3. Defendant has no established business relationship with Plaintiff, and Defendant lacks express prior written consent to contact Plaintiff on his cellular telephone for solicitation purposes. ECF No. 40-1 at ¶¶ 9-10.

4. On March 16, 2018, Plaintiff received a call from a representative of Fast Advance, which Plaintiff answered, regarding a sales pitch about business funding. ECF No. 1 at ¶¶ 21-22. Plaintiff told the caller that if he was interested or had any questions, he would call Defendant back. *Id.* at ¶ 25.

5. Plaintiff did not consent at that time to receiving any additional telemarketing calls. *Id.* After this first call, without ever giving Fast Advance

[5] Based on the Requests for Admission having been deemed admitted, all allegations in the Complaint have also been deemed admitted, pursuant to Request for Admission No. 15.

permission or consent to call him, Plaintiff received an additional 15 calls from Fast Advance from March 16, 2018 through April 20, 2018. *Id.* at ¶ 29.

6. On May 1, 2018, Plaintiff wrote an email to Fast Advance, copying Fast Advance's legal counsel, requesting that Fast Advance put his number on their internal do-not-call list and requested to receive a copy of Fast Advance's internal do-not-call policy. *Id.* at ¶ 35. Defendant did not provide a written copy of their internal do-not-call policy to Plaintiff. *Id.* at ¶ 36.

7. From May 1-3, 2018, Plaintiff received another five calls from Defendant. *Id.* at ¶¶ 42-47.

8. In total, Plaintiff received 22 calls from Fast Advance while his number was on the National Do-Not-Call registry, five of which Plaintiff received after requesting to have his number on Defendant's internal do-not-call list. *Id.* at ¶ 53; ECF No. 40-1 at ¶ 32.

9. Defendant has admitted that it "does not scrub against the [N]ational Do Not Call Registry," "does not honor Do Not Call requests as a matter of routine," and "does not purchase the [N]ational Do Not Call list from the [Federal Trade Commission ('FTC')]." ECF No. 40-1 at ¶¶ 20-22.

10. Defendant further admitted that it "has neither policies nor procedures in place to honor 'do not call' requests," "does not maintain an internal 'Do Not

Call' list," "never recorded any Do Not Call request made from" Plaintiff, and "did not honor Plaintiff Shelton's Do Not Call requests." ECF No. 40-1 at ¶ 23-26.

11. Finally, Defendant admitted that it does not have "TCPA compliance policies available for production upon request," that it "failed to provide Plaintiff with a copy of their Do Not Call [and TCPA] compliance policies upon Plaintiff's request," and that "the 22 calls Defendant placed to Plaintiff all violated the TCP[A], [§] 227(c)." *Id.* at ¶¶ 28-30, 33.

## IV. CONCLUSIONS OF LAW

12. Plaintiff has alleged the following violations of the TCPA: making a telephone solicitation to Plaintiff's cellular phone number which was included in the National Do Not Call Registry, 47 U.S.C. § 227(c)(3)(F) and 47 C.F.R. § 64.1200(c)(2); initiating a call for telemarketing purposes to his cellular phone without having a written policy, available on demand, for maintaining an internal do-not-call list, 47 C.F.R. § 64.1200(d)(1); failing to record his do-not-call request at the time such a request was made and failing to honor his do-not-call request within 30 days from the date of the request, 47 C.F.R. § 64.1200(d)(3).

13. Plaintiff is entitled to bring a private right of action for violation of the regulations prescribed under §227(c) pursuant to §227(c)(5) if he has "received more than one telephone call within any 12-month period by or on behalf of the same entity." 47 U.S.C. § 227(c)(5). Plaintiff is further entitled to recover actual

damages or "receive up to $500 in damages for each such violation," whichever is greater, and if the "court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." 47 U.S.C. § 227(c)(5)(C).[6]

[6] This Court questions whether Congress intended that a jury determine in the first instance whether there has been a violation of the regulations promulgated by the FCC or whether Congress had anticipated that the FCC or FTC would initially determine if there were a violation, and a plaintiff could then bring a private action for damages on this finding of violation. Clearly both the FTC and FCC have decided it is not in their purview to determine individual violations of the regulations. *See How the FCC Handles Your Complaint*, FCC.GOV, https://consumercomplaints.fcc.gov/hc/en-us/articles/202752940-Your-Role-in-the-FCC-Consumer-Complaint-Process (last visited May 7, 2019) ("We do not resolve individual complaints on [] issues [covered by the TCPA]. However, the collective data we receive helps us keep a pulse on what consumers are experiencing, may lead to investigations and serves as a deterrent to the companies we regulate."); *National Do Not Call Registry*, FTC.GOV, https://www.consumer.ftc.gov/articles/0108-national-do-not-call-registry (last visited May 7, 2019) ("Will I hear back from the FTC regarding my complaint? Due to the volume of complaints, the FTC cannot respond directly to every complaint. The FTC and other law enforcement agencies analyze complaints to spot trends and to identify and take action against the people responsible for these illegal calls.") Because both the FCC and FTC allow consumers to file a complaint but do not then resolve that complaint, a consumer has no other recourse to recover for TCPA violations outside of paying a $400 fee to begin costly federal litigation, and discovery on violation issues, which most consumers are not in a position to do. What is costly in this federal litigation is forcing the consumer to prove the violation in the first instance because the consumer does not come into court with a violation already determined by the FCC or FTC. The FTC acknowledges this epidemic of nuisance calls by stating, "[d]ue to the volume of complaints," yet the FTC and FCC leave the consumer to fend for him or herself thus giving the law and regulations no teeth and allowing the nuisance calls to continue unfettered despite having promulgated the very regulations meant by Congress to control them. This leaves the field not to consumers but to a cottage industry of serial TCPA filers, who are looking simply to make money and who know that the prime offenders of the TCPA actually target members registered on the National Do Not Call Registry, because they know these numbers to be good, viable numbers. This Court does not believe that Congress intended that a jury determine whether there was a violation of the regulations, requiring the jury to wade through FCC rules and regulations, but rather that a consumer first file a complaint with the FCC or FTC, the FCC

14. Because the Request for Admissions were admitted based on Defendant's failure to respond to the Requests for Admission within the time prescribed by Rule 36(a)(3), this Court concludes that Plaintiff is entitled to judgment on all six counts.

15. The TCPA prohibits sales calls to residential telephone subscribers[7] for telephone numbers listed on the National Do Not Call Registry. Specifically, § 227(c)(3) states:

---

or FTC determine whether there has been a violation of the regulations, and, finally, a court determine whether this violation, which has already been determined, was willful and knowing, potentially calling for treble damages pursuant to § 227(c)(5)(C) ("If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award.") (emphasis added). However, as it currently stands, those juries that substantively consider TCPA litigation, of which there are few, are attempting to fill the vacuum left by agencies who are in a much better position to determine a violation. The jury process as it has been evolved essentially eliminates as a practical matter the "private right of action" of the average consumer.

[7] Defendant did not raise the question of whether a cellular telephone number, like Plaintiff's telephone number, would be included in the definition of "residential telephone" or whether Plaintiff is a "residential telephone subscriber" as required by the TCPA. Since the Defendant did not make this argument, this Court will not consider it in its findings. However, this Court questions whether cellular telephone subscribers were intended to be included in the definition of "residential telephone subscriber," as drafted by Congress in 1991 and the regulations promulgated by the FCC shortly after. The definition of residential is "used as a residence or by residents," and "resident" is defined as "living in a place for some length of time," or "one who resides in a place." *Residential*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/residential; *Resident*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/residents. Therefore, the plain language of "residential telephone" describes a telephone used by individuals in the home, and not a cellular telephone, which can be used anywhere. Furthermore, the TCPA specifically mentions "cellular telephone service" in § 227(b) and § 64.1200(a)(1)(iii), indicating that both Congress and the FCC were aware of the distinction between a cellular telephone and a residential telephone and purposely protected only "residential telephone subscribers" under § 227(c), § 64.1200(c) and (d). "A familiar principle of statutory construction . . . is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006). The Court, therefore, is not convinced that

> The regulations required by paragraph (2) may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations, and to make that compiled list and parts thereof available for purchase. If the Commission determines to require such a database, such regulations shall— . . .
>
> (F) prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database
> 47 U.S.C. § 227(c)(3)

16. The resulting regulations establish a National Do Not Call Registry and state:

> No person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.
> 47 C.F.R. § 64.1200(c)(2)

17. The Court concludes that Plaintiff is entitled to judgment on Count I. Defendant has admitted that Plaintiff's personal telephone number "has been successfully registered on the National Do Not Call Registry since June 26, 2015." ECF No. 1 at ¶ 20. Defendant has further admitted that Defendant placed 22 telephone solicitations to Plaintiff's telephone while it was registered on the National Do Not Call Registry. ECF No. 1 at ¶¶ 21-22, 28, 29, 39, 42, 43, 44, 45,

---

Congress and the FCC, through the TCPA and its regulations, intended to protect "cellular telephone subscribers" along with "residential telephone subscribers." Again, however, Defendant did not raise this argument, and therefore it will not be considered in the Court's findings.

46; ECF No. 40-1 at ¶¶ 32, 33. Because Plaintiff has received more than one telephone call from Defendant in a 12-month period, he has a private right of action to recover actual damages or receive up to $500 for each violation, whichever is greater. 47 U.S.C. § 227(c)(5).

18. Therefore, the Court concludes that Plaintiffs are entitled to $500 for each phone call made to Plaintiff's phone in violation of § 227(c)(3) and § 64.1200(c)(2).[8]

19. The Court further concludes, pursuant to § 227(c)(5), that Defendant's violations were knowing and willful. Defendant has admitted that it "lacks any sort of express prior consent, written, verbal, or otherwise, to contact Plaintiff on his cellular phone for commercial purposes," that "Defendant does not scrub against the [N]ational Do Not Call Registry," and "does not purchase the [N]ational Do Not Call list from the FTC." ECF No. 40-1 at ¶ 11, 20, 22. Defendant further admitted that "Defendant has no established business relationship with Plaintiff," nor does Plaintiff have an "account with Defendant." *Id.* at ¶¶ 8, 9. Yet, Defendant made 22 calls for the purpose of solicitation to Plaintiff's telephone number. Therefore, this Court concludes that Defendant has

[8] In the Complaint, Plaintiff requested "injunctive relief prohibiting such conduct in the future," for Counts I and II. ECF No. 1 at ¶¶ 56, 58. Despite initially requesting such relief, Plaintiff has failed to pursue injunctive relief and has pursued only monetary relief. The Court therefore will not grant Plaintiff relief that he did not pursue.

willfully and knowingly violated § 227(c)(3)(F) and 47 C.F.R. § 64.1200(c)(2) and that Plaintiff is entitled to treble damages, totaling $1500 per phone call.

20. The regulations the FCC ("Federal Communications Commission") promulgated concerning the TCPA prohibit a person or entity from initiating a call for telemarketing purposes to a residential telephone subscriber unless they have instituted minimum procedures for maintaining an internal do-not-call list. Title 47 C.F.R. § 64.1200(d)(1) requires that "[p]ersons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list."

21. Defendant has admitted that "Defendant has neither policies nor procedures in place to honor 'do not call' requests." ECF No 40-1 at ¶ 23. Defendant further admits that "Defendant does not have TCPA compliance policies available for production upon request," and that "Defendant failed to provide Plaintiff with a copy of their Do Not Call compliance policies upon Plaintiff's request." ECF No. 40-1 at ¶ 29.

22. This Court, therefore, concludes that Defendant has violated 47 C.F.R. § 64.1200(d)(1) by initiating a call to Plaintiff for telemarketing purposes without having "a written policy, available upon demand, for maintaining a do-not-call list."

23. The FCC regulations further require a person or entity making a call for telemarketing purposes to record any request from a residential telephone subscriber not to receive calls from that person or entity and require that the person or entity honor that request within a reasonable time from the date the request is made, not to exceed thirty days. 47 C.F.R. § 64.1200(d)(3).

24. Defendant has admitted that "Defendant was given repeated 'do not call' requests by Plaintiff or an individual at Plaintiff's number," "Defendant does not maintain an internal 'Do Not Call' list," "never recorded any Do Not Call request made from Plaintiff's telephone number," "did not honor Plaintiff Shelton's Do Not Call requests," and "Defendant called Plaintiff at least five times after being told to stop calling." ECF No. 40-1 at ¶¶ 16, 25, 26, 31.

25. The Court, therefore, concludes that Defendant has violated 47 C.F.R. § 64.1200(d)(3) by initiating a call to Plaintiff for telemarketing purposes without recording Plaintiff's do-not-call request and after he requested to no longer receive calls from Defendant.[9]

---

[9] Defendant did not raise the issue of whether Defendant calling Plaintiff in the two days following Plaintiff's request to no longer receive calls from Defendant is a "reasonable" amount of time following the request to comply, especially considering that the TCPA regulations anticipate a period of "30 days" as a reasonable time. §64.1200(d)(3). However, because Defendant did not raise this issue, the Court determines that it waived its opportunity to challenge that these calls were made within the "reasonable" amount of time to honor the do-not-call request. Furthermore, because the Court finds that Plaintiff can receive statutory damages on a per-call basis, and not recover for multiple violations in each call, Plaintiff has already received statutory damages for this phone call based on violations of § 227(c)(3)(F) and § 64.1200(c)(2).

26. The Court further concludes that Defendant willfully and knowingly violated 47 C.F.R. § 64.1200(d)(1) and (d)(3) by initiating a call to Plaintiff for telemarketing purposes without having policies and procedures in place for maintaining a do-not-call list, without recording Plaintiff's do-not-call request, and after Plaintiff requested to no longer be called by Defendant for telemarketing purposes.

27. The Court concludes, however, that Plaintiff is limited to collecting statutory damages on a per-call basis for multiple claims, specifically Counts III-VI brought pursuant to the regulations requiring certain minimum procedures for maintaining a do-not-call list, 47 C.F.R. § 64.1200(d)(1) and (d)(3). The introductory language of 47 C.F.R. § 64.1200 states, "[n]o person or entity **shall initiate any call** for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity," prior to listing the minimum standards these procedures must meet. 47 C.F.R. § 64.1200(d) (emphasis added).

28. Interpreting this introductory language in conjunction with the "minimum standards" indicates that the regulations focus on the phone call itself. Therefore, the "violation of the regulations" anticipated by § 227(c)(5) is the

initiation of the phone call without having implemented the minimum procedures and not the failure to have the minimum procedures alone.

29. As there were 22 phone calls made in violation of the TCPA, Plaintiff is able to receive $500 per phone call violation. Because the Court has found that these violations were willful and knowing, Plaintiff is entitled to receive $1500 per phone call, pursuant to 47 U.S.C. § 227(c)(5)(C).

30. Additionally, Plaintiff's private right of action for all counts arises under § 227(c)(5), which specifically states that a person must "receive[] more than one telephone call within any 12-month period. . . in violation of the regulations" to have a private right of action.

31. This Court concludes that this language of § 227(c)(5) anticipates a plaintiff receiving $500 *per call* that is in violation of § 227(c), and not $500 per violation per call.[10]

---

[10] Plaintiff requests damages for multiple violations per phone call, without citing any binding authority requiring such a result. The Third Circuit has not directly discussed the issue of whether a plaintiff may recover for multiple violations of § 227(c) in the same telephone call. The Sixth Circuit, however, has explicitly held that the "language [of § 227(c)(5)] unambiguously allows for statutory damages on only a per-call basis." *Charvat v. GVN Michigan, Inc.*, 561 F.3d 623, 631 (6th Cir. 2009); *see also Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1106 (11th Cir. 2015) (comparing *Charvat v. NMP, LLC*, 656 F.3d 440, 449 (6th Cir.2011) (holding that a plaintiff can recover under section § 227(b)(3) and section § 227(c)(5) even if both violations arose from the same call) and *GVN Michigan, Inc.*, 561 F.3d at 631) (contrasting section 227(c)(5), which uses the word "call," with section 227(b)(3), which does "not even contain the word 'call'")). This Court agrees that Plaintiff is only allowed to receive statutory damages per call and not per violation, if there are multiple violations per call.

32. Therefore, the Court concludes that Plaintiff is not entitled to receive more than $1500 for each phone call, even if each phone call violates more than one regulation prescribed under § 227(c). Accordingly, even though this Court concludes that Defendant also violated 47 C.F.R. § 64.1200(d)(1) and (d)(3), Plaintiff may only recover on a per-call basis. Plaintiff is therefore entitled to $1500 for each of the 22 calls, or $33,000. A verdict will issue simultaneously with this Opinion.

**BY THE COURT:**

**DATED:** 5-8-2019

**CHAD F. KENNEY, JUDGE**